ACCEPTED
15-25-00014-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
4/9/2025 3:27 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00014-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
4/9/2025 3:27:57 PM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals
# for the Fifteenth District of Texas

## Blackstone Holdings III LP, et al.,
*Appellants,*
**v.**

## Primexx Energy Opportunity Fund, LP., et al.,
*Appellees.*

## Appeal from the First Business Court Division
## Dallas County, Texas
*Honorable Bill Whitehill, Judge Presiding*

## Appellants' Opening Brief

Christopher J. Schwegmann
  Texas Bar No. 24051315
  cschwegmann@lynnllp.com
David S. Coale
  Texas Bar No. 00787255
  dcoale@lynnllp.com
Christopher W. Patton
  Texas Bar No. 24083634
  cpatton@lynnllp.com

Yaman Desai
  Texas Bar No. 24101695
  ydesai@lynnllp.com
Kyle A. Gardner
  Texas State Bar No. 24116412
  kgardner@lynnllp.com
Jessica D. Cox
  Texas Bar No. 24114769
  jcox@lynnllp.com

**Lynn Pinker Hurst & Schwegmann LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:    (214) 981-3800
Facsimile:    (214) 981-3839

ORAL ARGUMENT
REQUESTED

## Identity of Parties and Counsel

1. Appellants: Blackstone Holdings III LP
   Blackstone EMA II LLC
   BMA VII LLC
   Blackstone Energy Management
   Associates II LLC
   Blackstone Energy Partners II LP
   Blackstone Management Associates
   VII LLC
   Blackstone Capital Partners VII LP
   BCP VII/BEP II Holdings Manager LLC
   BX Primexx Topco LLC

2. Counsel for   David S. Coale
   Appellant:    Christopher W. Patton
                 Christopher J. Schwegmann
                 Yaman Desai
                 Kyle A. Gardner
                 Jessica D. Cox
                 **Lynn Pinker Hurst &
                 Schwegmann LLP**
                 2100 Ross Ave., Suite 2700
                 Dallas, Texas 75201

3. Appellees:   Primexx Energy Opportunity Fund, LP
                Primexx Energy Opportunity Fund II, LP

4. Counsel for   Stephen Shackelford, Jr.
   Appellees:    1000 Louisiana Street, Suite 5100
                 Houston, Texas 77002
                 Marc M. Seltzer
                 Bryan Caforio
                 1900 Avenue of the Stars, Suite 1400
                 Los Angeles, CA 90067
                 Lindsey Godfrey Eccles
                 401 Union Street, Suite 3000
                 Seattle, WA 98101
                 Sarah Hannigan
                 One Manhattan West
                 New York, NY 10001
                 **Susman Godfrey L.L.P**

# Table of Contents

Identity of Parties and Counsel ...............................................................2

Table of Contents ...................................................................................3

Index of Authorities ................................................................................5

Statement of the Case ............................................................................9

Statement Regarding Oral Argument.................................................10

Issues Presented ...................................................................................11

Statement of Facts ............................................................................... 12

Summary of the Argument .................................................................. 14

Argument ............................................................................................. 16

    I.    The business court's opinion incorrectly applied Rule
        120a. ..................................................................................16

        A.    The plain terms of the phrase "entire proceeding" in
                Rule 120a mean all claims in a single lawsuit, not
                any and all lawsuits. ............................................... 16

        B.    Appellants did not consent to personal jurisdiction
                in the Fourth Lawsuit by moving to transfer the
                First Lawsuit.......................................................... 20

        C.    The business court ignored the effect of dismissal of
                the First Lawsuit.....................................................24

        D.    The business court's holding should be reversed for
                public policy. ..........................................................25

    II.    The record presents no alternative basis for affirmance. 27

        A.    Appellees did not plead any basis for specific
                jurisdiction. ............................................................27

B.    Appellees did not prove any basis for specific jurisdiction. ........................................................ 30

C.    Appellees did not prove judicial estoppel. ..............33

Conclusion ........................................................................36

Certificate of Service ........................................................38

Certificate of Compliance ................................................38

# Index of Authorities

**Cases**

*BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789 (Tex. 2002) ..................................................................16, 29

*Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ........................18

*CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889 (Tex. App.—Dallas 2007, pet. denied)..................36

*Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238 (Tex. 2008).........................................................18

*Crofts v. Ct. of Civ. App. for Eighth Sup. Jud. Dist.*, 362 S.W.2d 101 (Tex. 1962)................................................24

*CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 461 S.W.3d 627 (Tex. App.—Fort Worth 2015, pet. denied)..............................................................24

*Davey v. Shaw*, 225 S.W.3d 843 (Tex. App.—Dallas 2007, no pet.)...................................................................31

*Devon Energy Corp. v. Moreno*, No. 01-21-00084-CV, 2022 WL 547641 (Tex. App.—Houston [1st Dist.] Feb. 24, 2022, no pet.) .............................................................. 28

*Exito Elecs., Co., Ltd. v. Trejo*, 166 S.W.3d 839 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.)................................23

*Ford Motor Co. v. Cejas*, No. 09-16-00280-CV, 2018 WL 1003791 (Tex. App.—Beaumont Feb. 22, 2018, no pet.) ..... 21, 25

*Galley v. Apollo Associated Servs., Ltd.*, 177 S.W.3d 523 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ........................34

*Gespa Nicaragua, S.A. v. Recom AG*, 705 S.W.3d 362 (Tex. App.—El Paso 2024, pet. denied) ......................................22, 23

*Hegar v. Health Care Serv. Corp.*, 652 S.W.3d 39 (Tex. 2022) ............................................................... 17

*Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de CV*, 277 F. 2d 654 (N.D. Tex. 2002) ......................................................................23

*James v. Ill. Cent. R.R. Co.*, 965 S.W.2d 594 (Tex. App.— Houston [1st Dist.] 1998, no pet.)........................... 21, 23

*Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556 (Tex. 2014) ........17, 18

*Karaa v. Aramoonie*, No. 05-17-00571-CV, 2018 WL 1373958 (Tex. App.—Dallas Mar. 19, 2018, no pet.) .................32

*Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653 (Tex. 2010) ..................................................... 29, 30

*Mass. Bay Co. v. Adkins*, 615 S.W. 3d 580 (Tex. App.— Houston [1st Dist.] 2020, no pet.) ................................. 18, 19, 20

*McElroy Mach. v. Flores*, No. 13-08-00528-CV, 2010 WL 466901 (Tex. App.—Corpus Christi Feb. 11, 2010, no pet.)......................................................................... 31

*MDI, Inc. v. Lowder*, Case No. SA-08-VA-900-FB, 2009 WL 10669793 (W.D. Tex. Aug. 13, 2009)......................... 20

*Megadrill Servs. Ltd. v. Brighouse*, 556 S.W.3d 490 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ........................ 20, 23

*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569 (Tex. 2007) ...................................................... 31

*Motor Coach Indus., Inc. v. Del Refugio as Next Friend of Nanez*, No. 14-20-00825-CV, 2022 WL 3725144 (Tex. App.—Houston [14th Dist.] Aug. 30, 2022, pet. denied).......................................................................18

*MPI Indus. Carolinas, LLC v. CTE Networks, LLC*, No. 05-24-00560-CV, 2025 WL 777337 (Tex. App.—Dallas Mar. 11, 2025, no pet. h.) .........................................27

*Old Republic Nat. Title Ins. Co. v. Bell*, 549 S.W.3d 550 (Tex. 2018) ..........................................................32

*Pena v. Waypoint Marine, Inc.*, No. 2:22-CV-00228, 2023 WL 2226817 (S.D. Tex. Jan. 25, 2023), *report and recommendation adopted*, No. 2:22-CV-00228, 2023 WL 2226807 (S.D. Tex. Feb. 24, 2023) ...................................... 19

*PermiaCare v. L.R.H.*, 600 S.W.3d 431 (Tex. App.—El Paso 2020, no pet.) .......................................................................... 29

*Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428 (Tex. 2017) ................................................................................... 34

*Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) .............. 31

*Rainbow Mgmt. of Hillsborough, Inc. v. Trevino*, No. 13–10-00127-CV, 2011 WL 1642276 (Tex. App.—Corpus Christi Apr. 28, 2011, no pet.) .................................................... 30

*Rieder v. Woods*, 603 S.W.3d 86 (Tex. 2020) .................................... 34

*RKI Expl. & Prod., LLC v. Ameriflow Energy Servs., LLC*, No. 02-20-00384-CV, 2022 WL 2252895 (Tex. App.—Fort Worth June 23, 2022, no pet.) .......................................... 17

*State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399 (Tex. 2023) ................................................................................... 26

*Stauffer v. Nicholson*, 438 S.W.3d 205 (Tex. App.—Dallas 2014, no pet.) ......................................................................... 23

*Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120 (Tex. App.—Dallas 2021, no pet.) ............................... 23, 28, 29

*TIC N. Cent. Dallas 3, L.L.C. v. Envirobusiness, Inc.*, 463 S.W.3d 71 (Tex. App.—Dallas 2014, pet. denied) ..................... 24

*Touradji v. Beach Cap. P'ship, L.P.*, 316 S.W.3d 15 (Tex. App.—Houston [1st Dist.] 2010, no pet.) .................................. 18

*Waterman S.S. Corp. v. Ruiz*, 355 S.W.3d 387 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ...................................... 22

*Willow Tree Consulting Grp., LLC v. S.D. Trust Co., LLC,*
No. 05-22-00176-CV, 2023 WL 3749803 (Tex. App.—
Dallas June 1, 2023, no pet.)......................................................32

*Zamarron v. Shinko Wire Co., Ltd.*, 125 S.W.3d 132
(Tex. App.—Houston [14th Dist.] 2003, pet. denied) ...............23

**Rules**

Tex. R. App. P. 9.4(3)................................................................. 38

Tex. R. App. P. 9.4(i).................................................................. 38

Tex. R. App. P. 9.4(i)(l)............................................................... 38

Tex. R. Civ. P. 120a ................................................................*passim*

**Other Authorities**

*Merriam-Webster Dictionary* (2025)................................................. 17

# Statement of the Case

*Nature of the Case:* This case involves fiduciary-duty claims about the sale of a limited partnership's assets.

The issue on appeal is whether a Texas court has personal jurisdiction over Appellants.

*Trial Court:* First Business Court Division
Dallas County
Hon. Bill Whitehill, Presiding

*Course of Proceedings and Trial Court Disposition:* Appellees filed this case in business court in October 2024.[1] Appellants filed special appearances.[2]

After briefing[3] and a hearing[4], the business court denied Appellants' special appearances.[5] Its opinion appears in Appendix "B"' to this brief.

---

[1] 1CR4–43.
[2] 1CR234–53.
[3] 1CR700–15, 719–53.
[4] 1RR1–175.
[5] 1CR754–7, 1045–81.

9

**Statement Regarding Oral Argument**

Appellants respectfully submit that oral argument would help the Court resolve this appeal, which presents an issue of first impression about the business court's exercise of personal jurisdiction over an "entire proceeding" under Texas Rule of Civil Procedure 120a.

## Issues Presented

The overarching question in this appeal is whether a Texas court can exercise personal jurisdiction over Appellants. That question presents these specific issues:

1.      Appellees have sued Appellants four times. In the first of those cases, Appellants won a dismissal because Appellees violated a forum-selection clause. Did that successful motion waive any later challenge to personal jurisdiction in Appellees' subsequent lawsuits?

2.      If Appellants did not give a blanket consent to Texas jurisdiction, did Appellees meet their burden to plead and prove minimum contacts with Texas that involve the "operative facts" of this case?

## Statement of Facts

In this case, two minority shareholders are suing about the exercise of an agreed-upon contractual right to sell the assets once owned by Primexx Resources Development, LLC. This is Appellees' fourth lawsuit against Appellants about those sale proceeds.

Appellees first sued Appellants on December 12, 2022, in the 298th District Court in Dallas County, No. DC-22-17122 ("First Lawsuit").[6] Appellants answered with a motion to dismiss, based on a forum selection clause in the Limited Partnership Agreement that required Appellees to sue in federal court in Dallas.[7] The court granted Appellants' motion and dismissed the First Lawsuit on March 29, 2023.[8]

Appellees sued Appellants a second time on May 4, 2023, in the United States District Court for the Northern District of Texas, No. 3:23-CV-00985-K ("Second Lawsuit").[9] Before Appellants answered or otherwise appeared, the federal court dismissed the Second Lawsuit *sua sponte* for lack of subject matter jurisdiction.[10]

Shortly after that dismissal, Appellees sued a third time in the 68th District Court in Dallas County, No. DC-23-10916 ("Third

---

[6] 1CR7 ¶ 5.
[7] 1CR176−85.
[8] 1CR187−8.
[9] 1CR8 ¶ 7.
[10] 1CR190−9.

Lawsuit").[11] Appellants specially appeared to contest personal jurisdiction.[12] Other defendants filed an unopposed motion to transfer to the 298th District Court in Dallas County.[13]

The case was transferred and later removed to the First Business Court Division (Cause No. 24-BC01B-0004) by Appellees on September 30, 2024.[14] Before the business court ruled on Appellants' special appearance, Appellees non-suited their claims and dismissed the Third Lawsuit without prejudice.[15]

Appellees filed this fourth case on October 25, 2024, in the First Business Court Division (Cause No. 24-BC01A-0010) ("Fourth Lawsuit").[16] As in the Third Lawsuit, Appellants specially appeared to contest personal jurisdiction.[17] After briefing[18] and a hearing[19], the business court denied Appellants' special appearance, holding that they waived their objection to jurisdiction by moving to dismiss the First Lawsuit.[20] The business court's opinion did not address any other issues about personal jurisdiction. This appeal followed.

---

[11] 1CR9 ¶ 10.
[12] 1CR9 ¶ 10.
[13] 1CR321–6.
[14] 1CR201–8.
[15] 1CR767 ¶ 12.
[16] 1CR4–43.
[17] 1CR234–53.
[18] 1CR700–15, 719–53.
[19] 1RR1–175.
[20] 1CR754–7.

## Summary of the Argument

The business court misread Tex. R. Civ. P. 120a, construing the phrase "entire proceeding" to mean all cases between the parties about the same subject matter, rather than just the claims pending in the current proceeding. The business court's analysis is inconsistent with the wording of that rule and the precedent applying it.

Appellants did not consent to personal jurisdiction in the Fourth Lawsuit by moving to dismiss the First Lawsuit based on a forum selection clause. Courts have consistently held that a defendant's participation in a lawsuit does not constitute consent to personal jurisdiction in future, unrelated lawsuits. The business courts should not become an outlier on that important principle.

The business court also ignored the effect of Appellees' dismissal of the First Lawsuit without prejudice, which placed the parties in the position they were in before the court's jurisdiction was invoked. As a matter of law, at that point, nothing that occurred in the First Lawsuit could have waived Appellants' right to object to personal jurisdiction in the Fourth Lawsuit.

The business court's opinion also creates uncertainty for future cases. It did not establish clear guidelines for the degree of relatedness needed to establish consent or the timeframe within which a failure to challenge personal jurisdiction in one case could act as consent in another.

Because this record presents no alternative basis for affirmance of the business court's denial of Appellants' special appearances, this Court should render judgment that the business court does not have jurisdiction over Appellants.

Appellees' generalized allegations and conclusory claims did not meet their pleading burden to specify each defendant's actions and contacts with Texas. Moreover, Appellees did not provide evidence of Appellants' purposeful availment of the Texas forum as to any activity related to the "operative facts" of this case. And Appellees' judicial-estoppel argument is defeated by the plain terms of the underlying contract at issue in the case.

## Argument

The business court's opinion addressed one issue—the residual effect of Appellants' actions in the First Lawsuit.[21] This brief starts by addressing that issue and showing why this Court should, at a minimum, reverse and render judgment that Appellants' actions in that case did not waive their later special appearances in this action. The brief then shows that, because the record presents no other reason to affirm the denial of Appellants' special appearances, this Court should reverse and render judgment that the special appearances are granted in their entirety. All issues presented are questions of law that this Court reviews de novo.[22]

## I.   The business court's opinion incorrectly applied Rule 120a.

### A.   The plain terms of the phrase "entire proceeding" in Rule 120a mean all claims in a single lawsuit, not any and all lawsuits.

Rule 120a allows a special appearance "as to an entire proceeding or as to any severable claim involved therein." The business court incorrectly read the phrase "entire proceeding" to mean all cases, pending or closed, between the parties about the same subject matter. Specifically, it held that Appellants' answer in

---

[21] *See* 1RR118 ("[T]he question is: Does the fact that [Appellants] filed an actual answer, in a prior iteration of the exact same case, a violation of 120a?").
[22] *See, e.g.*, *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

the First Lawsuit "waive[ed] any objection to personal jurisdiction" in this action, because "[t]his action is essentially 'a continuation of the proceeding' of the First [Lawsuit]"—"[they are] essentially the same action."[23]

In interpreting a rule or statute, a court's "objective is to ascertain and give effect to the [drafter's] intent," which is done by enforcing the plain meaning of the text, "informed by its context."[24] The business court's interpretation of Rule 120a is erroneous because it is not consistent with the plain terms of that rule.

The key sentence of Rule 120a has two clauses separated by the disjunctive "or": "A special appearance may be made as to an entire proceeding **_or_** as to any severable claim involved therein."[25] While the clauses are distinct, the second clause has a limiting phrase – "involved therein" – that indicates it "arises out of" the first clause.[26]

For this reason, courts have interpreted the phrase "any severable claim" in Rule 120a to mean a specific pending claim that is severable from the other claims in the case.[27] Therefore, the phrase

---

[23] 1CR1074, 78.
[24] *Hegar v. Health Care Serv. Corp.*, 652 S.W.3d 39, 43 (Tex. 2022).
[25] TEX. R. CIV. P. 120a (emphasis added).
[26] *See RKI Expl. & Prod., LLC v. Ameriflow Energy Servs., LLC*, No. 02-20-00384-CV, 2022 WL 2252895, at *13 (Tex. App.—Fort Worth June 23, 2022, no pet.) (similarly analyzing the term "herewith").
[27] *See Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 565 (Tex. 2014) ("[C]laim," "cause of action," and "chose in action" [ ] refer to the facts giving rise to a right that is enforceable in that proceeding."); *Merriam-Webster Dictionary* (2025) (defining "therein" as "in that thing").

"entire proceeding" must mean something more than the severable claims pending in the proceeding. Otherwise, the limiting phrase would lose any independent meaning. That result is impermissible in a proper construction of a rule or statute under Texas law.[28]

The only reasonable interpretation is that "entire proceeding" means all claims pending in the proceeding, not just those that are severable.[29] While not directly construing that language, substantial precedent shows that Rule 120a is customarily interpreted in a way that is consistent with that reading of the rule.[30]

In conflict with the Rule's plain language, the business court mistakenly relied on *Massachusetts Bay Company v. Adkins* to hold that "entire proceeding" means "all cases" between the parties rather than "all claims" in the case.[31] In *Massachusetts Bay*, a defendant

---

[28] *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous.").

[29] *See Jaster*, 438 S.W.3d at 563–65 (discussing that the legislature often uses "action" and "proceeding" interchangeably, and that "action" refers to "an entire lawsuit" or "proceeding," "not to discrete 'claims' or 'causes of action' asserted within a suit, cause or proceeding.").

[30] *See, e.g.*, *Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 480 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that because the defendant did not specially appear as to only specific claims in the case, the special appearance applied to all pending claims alleged in that case); *Motor Coach Indus., Inc. v. Del Refugio as Next Friend of Nanez*, No. 14-20-00825-CV, 2022 WL 3725144, at *4 (Tex. App.—Houston [14th Dist.] Aug. 30, 2022, pet. denied) (same); *Touradji v. Beach Cap. P'ship, L.P.*, 316 S.W.3d 15, 26 n.5 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (noting that a defendant can specially appear as to all claims pending in the case or as to specific claims if the specific claims are severable).

[31] 1CR1070–5 (analyzing and applying *Mass. Bay Co. v. Adkins*, 615 S.W. 3d 580 (Tex. App.—Houston [1st Dist.] 2020, no pet.)).

generally appeared in a case before its transfer to an MDL court, and then tried to file a special appearance after transfer.[32] The First Court affirmed the denial of the defendant's special appearance, explaining that "if a case is transferred from the original trial court to the MDL court," it constitutes one "entire proceeding" for purposes of Rule 120a.[33]

*Massachusetts Bay* is distinguishable from this case. Here, the Fourth Lawsuit was not transferred or removed to the business court. It was directly filed in the business court after Appellees non-suited the Third Lawsuit, after the federal court dismissed the Second Lawsuit, and after the 298th District Court dismissed the First Lawsuit.[34]

In other words, unlike in *Massachusetts Bay*, the Fourth Lawsuit was not a "continuation" of the First Lawsuit. Thus, *Massachusetts Bay*, which embodies a well-recognized—and irrelevant—principle about the due order of pleadings in the same cause number,[35] does not support the business court's holding.

The business court's reading of Rule 120a conflicts with the plain terms of that rule.

---

[32] *Mass. Bay*, 615 S.W.3d at 590-94.

[33] *Id.* at 599.

[34] 1CR1049−52.

[35] *See, e.g.*, *Pena v. Waypoint Marine, Inc.*, No. 2:22-CV-00228, 2023 WL 2226817, at *3 (S.D. Tex. Jan. 25, 2023), *report and recommendation adopted*, No. 2:22-CV-00228, 2023 WL 2226807 (S.D. Tex. Feb. 24, 2023) ("By filing a general appearance in Texas state court, a nonresident defendant submits to the

## B. Appellants did not consent to personal jurisdiction in the Fourth Lawsuit by moving to transfer the First Lawsuit.

The business court held that Appellants "voluntarily appeared and chose to litigate claims arising from the [asset sale]" in the Fourth Lawsuit by "mov[ing] to dismiss the First [Lawsuit], seeking affirmative relief from the court and invoking its judgment regarding the [Limited Partnership Agreement's] forum-selection clause."[36] That conclusion is not supported by the applicable precedent.

It is well recognized that a defendant's participation in a lawsuit does not constitute consent to personal jurisdiction in that forum *ad infinitum*.[37] The Ninth Court addressed a materially

---

exercise of personal jurisdiction by the Texas court."). But if a defendant generally appears in a state court case that is dismissed then refiled in federal court, the defendant does not waive the right to contest personal jurisdiction in the refiled action. *See, e.g.*, *MDI, Inc. v. Lowder*, Case No. SA-08-VA-900-FB, 2009 WL 10669793, at *9 (W.D. Tex. Aug. 13, 2009) ("Had this case been removed from state court, Francisco would have waived his right to contest personal jurisdiction . . . However, this case was originally filed in this Court . . . MDI cites no cases establishing that, in that situation, the federal defendant who has waived his right to contest personal jurisdiction in state court on state law claims also waives his right to contest personal jurisdiction in federal court on federal claims derived from the same operative facts."). Because cases transferred to an MDL court can be remanded back to their original district court, the issue in *Massachusetts Bay* is more akin to a federal case that was removed but can be remanded back to state court. *See Massachusetts Bay*, 615 S.W. 3d at 599 ("When a case is remanded to the trial court from the MDL court, the clerk of the MDL court is directed to send the case file back to the original trial court . . .).

[36] 1CR1067.

[37] *See Megadrill Servs. Ltd. v. Brighouse*, 556 S.W.3d 490, 499 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that even though the defendant obtained a judgment by successfully defending against the plaintiff's claims, the plaintiff's initiation of the lawsuit and prosecution of the claims "neither implie[d] consent to be sued for all purposes in Texas, nor d[id] they in and of

identical situation in *Ford Motor Co. v. Cejas*.[38] In that case, Ford

Motor and Bridgestone Tire were sued in Jefferson County about a

car accident in Mexico. After the case was transferred to Montgomery

County and consolidated into an MDL proceeding, Ford and

Bridgestone – similar to Appellants – moved for dismissal based on

*forum non conviens* in favor of a Mexican forum.[39]

The MDL court dismissed without prejudice to refiling in

Jefferson County if Mexico declined to exercise jurisdiction. Seven

years later, the plaintiff re-filed the same lawsuit in Jefferson County.

Ford and Bridgestone both filed special appearances. The plaintiff

objected, arguing – just like Appellees – that Ford and Bridgestone

waived personal jurisdiction in the second lawsuit by not contesting

it in the first lawsuit.[40]

In affirming the trial court's rejection of the plaintiff's waiver

argument, the Ninth Court held that the second lawsuit was a "new

proceeding" for purposes of Rule 120a.[41] Thus, Ford's and

---

themselves constitute sufficient continuous and systematic contacts sufficient to render [defendant] essentially at home in this State."); *James v. Ill. Cent. R.R. Co.*, 965 S.W.2d 594, 599–600 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("Regardless of its involvement in other litigation, a court's exercise of personal jurisdiction over an unlicensed nonresident corporation depends upon minimum contacts analysis and considerations of fair play and substantial justice.").

[38] *Ford Motor Co. v. Cejas*, No. 09-16-00280-CV, 2018 WL 1003791 (Tex. App.—Beaumont Feb. 22, 2018, no pet.).

[39] *Id.* at *1.

[40] *Id.* at *1–2.

[41] *Id.* at *5.

Bridgestone's challenge to a Texas venue in the first lawsuit did not waive their objections to personal jurisdiction in the second lawsuit.[42]

Similarly, in *Waterman Steamship Corp. v. Ruiz,* the plaintiff nonsuited his claims after the defendants challenged venue.[43] The plaintiff then intervened in a second proceeding (involving substantively identical claims) and argued that the defendants' failure to contest personal jurisdiction in the first lawsuit was a waiver of the defendants' special appearance in the second lawsuit.[44]

The First Court reversed the trial court's denial of the defendants' special appearance, concluding that the defendants did not waive their objection to personal jurisdiction in the second lawsuit, even though they did not contest personal jurisdiction to a previous lawsuit arising out of the same subject matter.[45]

---

[42] *See id.* ("[W]e agree with Ford and Bridgestone that Plaintiffs' 2014 Suit is a new proceeding initiated by the filing of a new petition[,]" and the "Order on Forum Non Conveniens [did] not limit Ford and Bridgestone's right to assert defenses in any refiled action[.]").

[43] *Waterman S.S. Corp. v. Ruiz,* 355 S.W.3d 387, 397-399 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

[44] *Id.*

[45] *Id.* at 399 (holding that "even if Waterman and Maersk waiver their objections to personal jurisdiction in [the first] case . . . any waiver in the [second] case was extinguished by the nonsuit and cannot operate as a basis for denying Waterman's and Maersk's special appearances in [the second] case."); *see also Gespa Nicaragua, S.A. v. Recom AG,* 705 S.W.3d 362, 375, 370–380 (Tex. App.—El Paso 2024, pet. denied) (holding that obtaining a dismissal of a lawsuit based on a forum selection clause did not waive the defendant's right to contest personal jurisdiction in a later, related case).

Here, the business court focused on whether "[v]oluntarily *filing* a lawsuit in a jurisdiction is [ ] purposeful availment."[46] But just like the plaintiffs in *Cejas* and *Waterman Steamship*, Appellants did not file any lawsuit in Texas. Rather, they raised a procedural objection in defense of a lawsuit filed against them in Texas.[47]

No case cited by the business court involved a waiver based on a defendant's procedural objection while defending a prior lawsuit.[48] And courts that have analyzed the issue presented here have found in Appellants' favor.[49]

---

[46] 1CR1069 (emphasis added).

[47] 1CR176–85.

[48] *See* 1CR1069–71 (citing *Gen. Contracting & Trading Co. v. Interpole*, 940 F.2d 20, 23 (1st. Cir. 1991) (defendant waived personal jurisdiction by "institut[ing] Suit No. 2]"); *Primera Vista S.P.R. de R.L. v. Banca Serfin, S.A. Institucion de Banca Multiple Grupo Financiero Serfin*, 974 S.W.2d 918, 921 (Tex. App.—El Paso 1998, no pet.) (defendant did not waive personal jurisdiction by filing an unrelated lawsuit in another Texas county); *Zamarron v. Shinko Wire Co., Ltd.*, 125 S.W.3d 132, 143 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (same); *Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de CV*, 277 F. 2d 654, 668 (N.D. Tex. 2002) (defendant waived personal jurisdiction by "fil[ing] a complaint with a usury claim" against the plaintiff)).

[49] *See, e.g.*, *Gespa*, 705 S.W.3d at 379–80; *James*, 965 S.W.2d at 599–600 (holding defendant did not waive personal jurisdiction against the plaintiff's claims by defending against other lawsuits in Texas); *Megadrill Servs.*, 556 S.W.3d at 499 (same, and collecting cases); *Exito Elecs., Co., Ltd. v. Trejo*, 166 S.W.3d 839, 859 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.) (holding defendant's failure to contest jurisdiction in previous lawsuit filed by a different plaintiff but relating to the same subject matter did not preclude defendant from challenging jurisdiction); *Invasix, Inc. v. James*, No. 05-19-00494-CV, 2020 WL 897243, at *6 (Tex. App.—Dallas Feb. 25, 2020, no pet.), *overruled on other grounds by Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120 (Tex. App.—Dallas 2021, no pet.) (finding evidence that defendant "voluntarily appeared in previous suits" irrelevant to whether the court had jurisdiction); *Stauffer v. Nicholson*, 438 S.W.3d 205, 211 (Tex. App.—Dallas 2014, no pet.) (holding that plaintiff previously obtaining order from probate court that

Appellants' motion to transfer the First Lawsuit did not waive their challenge to personal jurisdiction in the Fourth Lawsuit.

### C. The business court ignored the effect of dismissal of the First Lawsuit.

The First Lawsuit ended when the 298th District Court dismissed it without prejudice for improper venue.[50] Because a dismissal without prejudice terminates the effect of any prior filings, nothing that occurred in the First Lawsuit can waive Appellants' challenge to personal jurisdiction in the Fourth Lawsuit.

A dismissal without prejudice "places the parties in the position that they were in before the court's jurisdiction was invoked."[51] "It is elementary" that a dismissal without prejudice "is in no way an adjudication of the rights of the parties[.]"[52] Instead, it is treated as though "the suit had never been brought."[53]

When Appellees filed the Fourth Lawsuit, they began a completely new case against Appellants. At that moment, the parties

---

specified continuing jurisdiction for its enforcement did not equate to the defendant consenting to jurisdiction in Texas for related claims by the same plaintiff).

[50] 1CR187–8.

[51] *TIC N. Cent. Dallas 3, L.L.C. v. Envirobusiness, Inc.*, 463 S.W.3d 71, 77 (Tex. App.—Dallas 2014, pet. denied) (citing *Crofts v. Ct. of Civ. App. for Eighth Sup. Jud. Dist.*, 362 S.W.2d 101, 104 (Tex. 1962)).

[52] *Crofts*, 362 S.W.2d at 104 (citations omitted).

[53] *Envirobusiness*, 463 S.W.3d at 77; *see also CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 461 S.W.3d 627, 630 (Tex. App.—Fort Worth 2015, pet. denied) ("A dismissal with prejudice is an adjudication of the parties' rights; a dismissal without prejudice is not.").

occupied the same legal position that they did before Appellees filed the First Lawsuit. Therefore, as a matter of law, nothing that Appellants did in the First Lawsuit could have waived Appellants' right to object to personal jurisdiction in the Fourth Lawsuit.[54]

Because Appellants' motion to dismiss for improper venue was filed in the First Lawsuit, which was dismissed without prejudice, Appellants did not waive their right to contest jurisdiction in the Fourth Lawsuit, and the business court's order to the contrary was in error.

### D.    The business court's holding should be reversed for public policy.

For two reasons, the business court's opinion creates an unworkable test for future cases.

First, the business court's opinion was not clear about the degree of "relatedness" needed to establish consent. It did not detail whether the parties and causes of action must be *identical* between the earlier and later cases, or if, instead, it is sufficient merely for the causes of action pleaded by a party to align or have some bearing on claims in the immediate case. Without a clear standard, the door is

---

[54] *See, e.g.*, *Cejas*, 2018 WL 1003791 (agreeing with defendants that "any waiver of personal jurisdiction by [defendants]" in the first lawsuit "was extinguished" after trial court dismissed first lawsuit without prejudice).

left open for parties to cry "consent" based on tangentially related cases, requiring needless time and resources to resolve.

Second, the business court's holding sets no guidelines for how close in time the pending case must be to the "consent" case to affect a waiver of personal jurisdiction. Here, the First Lawsuit was applied against Appellants over three lawsuits and a year later.[55] Without clearly established guidelines, the business court's holding creates a risk that a failure to challenge personal jurisdiction in one case could act as "consent" to personal jurisdiction in perpetuity.

This is particularly troubling because the supreme court holds that personal jurisdiction involves a "'claim-by-claim' analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation."[56] Later cases would have to not only to entertain "consent" jurisdiction arguments borne out of related cases, but also arguments based on the assertion that similar *claims* had been brought in earlier, entirely separate cases.

This uncertain standard should not be the precedent in the Texas business-court system.

* * *

The business court's conclusion about waiver is erroneous. It misreads Rule 120a, misapplies precedent about the due order of

---

[55] 1CR7 ¶ 5; 1CR1049–52.

[56] *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 413 (Tex. 2023).

pleading and the effect of a dismissal, and invites confusion in future litigation. This Court should reverse and render judgment that no waiver occurred.

## II. The record presents no alternative basis for affirmance.

The record shows no alternative grounds for affirmance of the business court's denial of Appellants' special appearances. Accordingly, this Court should not only reverse the business court on the issue in its opinion, but also reverse the denial of Appellants' special appearances and render judgment that they are granted.[57]

### A. Appellees did not plead any basis for specific jurisdiction.

Appellees did not dispute that the business court lacks general jurisdiction over Appellants.[58] Appellees argued that Appellants had sufficient minimum contacts with Texas to create specific personal jurisdiction, but the record does not support that argument.

---

[57] *See, e.g.*, *MPI Indus. Carolinas, LLC v. CTE Networks, LLC*, No. 05-24-00560-CV, 2025 WL 777337 (Tex. App.—Dallas Mar. 11, 2025, no pet. h.) (reversing trial court's denial of special appearance and rendering judgment dismissing appellees' claims for want of personal jurisdiction).
[58] *See* 1CR1053 ("None of the [ ] Defendants are alleged to be Texas residents.").

Appellees had a burden to plead sufficient allegations to support personal jurisdiction, and to prove those allegations.[59] Appellees failed to meet their burden as to either requirement.

As to pleading, in a case that involves multiple defendants, the defendants' contacts cannot be lumped together.[60] "Rather, the plaintiff must specify, and the court must examine, ***each defendant's*** actions and contacts with the forum."[61] Appellees did not do so here.

Instead, Appellees systematically "refer[red] jointly" to all "Defendants" or to all "the Blackstone entities" simply as "Blackstone."[62] As a matter of law, Appellees' deliberative ambiguity does not establish personal jurisdiction over each Appellant.[63]

Even assessed together, Appellees' generalized allegations do not support specific jurisdiction over Appellants in Texas. In fact, Appellees make no assertion that ***any*** Appellant performed any act

---

[59] *Steward Health Care Sys. LLC v. Saldana*, 633 S.W.3d 120, 126 (Tex. App.—Dallas 2021, no pet.) (en banc).

[60] *Devon Energy Corp. v. Moreno*, No. 01-21-00084-CV, 2022 WL 547641, at *13 (Tex. App.—Houston [1st Dist.] Feb. 24, 2022, no pet.).

[61] *Id.* (emphasis added).

[62] *See, e.g.*, 1CR17 ¶ 37; 1CR1052 (acknowledging that Appellees allege jurisdictional fact allegations "generally as to all 'Defendants'").

[63] *Devon*, 2022 WL 547641, at *13 (deeming the plaintiff's attempt to refer to related defendants broadly as "Devon Entities" to be inadequate to support specific jurisdiction).

***in Texas***. Courts have consistently found this sort of "all-inclusive" allegation to be insufficient to satisfy a plaintiff's burden.[64]

The most Appellees offered were conclusory allegations that "Defendants continuously and systematically did business in the State of Texas, have purposefully availed themselves of the privileges of conducting activities inside the State of Texas, and invoked the benefits and protections of the laws of the State of Texas."[65] But again, such general allegations do not satisfy Appellees' burden to plead sufficient jurisdictional facts.[66]

Because Appellees did not meet their initial pleading burden, Appellants only had to show that they are not residents of Texas to win their special appearances.[67] Because there is no dispute about their residence, the special appearances were established as a matter of law.

---

[64] *See, e.g., Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 659–60 (Tex. 2010). (plaintiff "failed to plead facts within the reach of the long-arm statute because it did not allege that the [defendants] committed any tortious acts in Texas"); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d at 797 (determining specific jurisdiction lacking where plaintiff failed to show that defendant "made [any] representations to [plaintiffs] in Texas").
[65] 1CR16 ¶ 31.
[66] *See PermiaCare v. L.R.H.,* 600 S.W.3d 431, 444 (Tex. App.—El Paso 2020, no pet.) ("[C]onclusory allegations in a pleading are insufficient to meet a plaintiff's burden of establishing jurisdiction; instead, a plaintiff must allege specific facts that, if true, would affirmatively demonstrate the court's jurisdiction to hear the case.").
[67] *See Steward Health*, 633 S.W.3d at 125-26.

## B.    Appellees did not prove any basis for specific jurisdiction.

Even after jurisdictional discovery, Appellees failed to meet their burden to prove Appellants' purposeful availment.[68]

Specifically, Appellees made four allegations – all of which are insufficient to establish personal jurisdiction.

1. Appellees made the conclusory claim that Appellants had "direct involvement" in the asset sale and "participated in the transaction by directing the sale of Texas oil assets."[69] But Appellees never explained how these defendants were allegedly involved in the transaction, much less how they were involved in the State of Texas.[70]

2. Appellees alleged that some Appellants committed to raise capital for an initial investment that occurred in 2016.[71] However, this investment has nothing to do with Appellees' claims, which relate solely to the sale of Primexx assets more than five years later. Because those alleged contacts do not form part of the "operative

---

[68] *See Kelly*, 301 S.W.3d at 659 (plaintiff must "present the trial court with evidence establishing personal jurisdiction"); *Rainbow Mgmt. of Hillsborough, Inc. v. Trevino*, No. 13–10–00127–CV, 2011 WL 1642276, at *4 (Tex. App.—Corpus Christi Apr. 28, 2011, no pet.) ("plaintiff ultimately has the burden of establishing jurisdiction" but failed to meet that burden when he "presented no evidence").

[69] 1CR722–3.

[70] *See* 1CR706.

[71] 1CR725–6.

facts" of this case, they are irrelevant as a matter of law to the issue of personal jurisdiction.[72]

3. Appellees alleged that Appellants were in the "same corporate chain" as other defendants that were purportedly more involved in the asset sale.[73] Here again, this allegation has nothing to do with the operative facts of the asset sale. Moreover, Appellees provided no legal or factual basis for the business court to impute the contacts of other defendants onto Appellants, an act that other courts have rendered improper.[74]

4. Finally, Appellees contended that seven Appellants were subsequently distributed shares from the asset sale.[75] Again, Appellees do not say how this alleged contact involves an operative

---

[72] *See Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (recognizing that to identify the operative facts, courts look to "those facts that would be the focus of the trial"); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 581 (Tex. 2007) (rejecting similar "expansive" jurisdictional theory as having "no limiting principle" and "too broad and judicially unmoored").

[73] *See* 1CR1055–6 (Appellees "allege the remaining [ ] Defendants . . . [are] in the corporate chain" with defendants who "signed the [Limited Partnership Agreement].").

[74] *See Davey v. Shaw*, 225 S.W.3d 843, 854 (Tex. App.—Dallas 2007, no pet.) (Texas courts respect corporate formalities, refraining from imputing the alleged jurisdictional contacts of one entity on another); *McElroy Mach. v. Flores*, No. 13-08-00528-CV, 2010 WL 466901, at *1 (Tex. App.—Corpus Christi Feb. 11, 2010, no pet.) ("When determining whether the forum has personal jurisdiction over the nonresident defendant, we must only consider the nonresident defendant's contacts with the forum state and not acts of a third person or another party.").

[75] *See* 1CR725–8; *see also* 1CR1055–6 (Appellees "allege the remaining [] Defendants each [ ] received millions of [ ] shares in consideration for the [asset] sale.").

fact of this case, nor could they. The gravamen of this lawsuit is the consummation of the asset sale and the overall value received, not which defendant entity received the value. None of Appellees' claims relate to which entities received distribution of these proceeds. Thus, Appellants' receipt of proceeds is no evidence that they had relevant Texas contacts.

And even if these alleged contacts did relate to the operative facts of this case, they would still not allow the exercise of personal jurisdiction over Appellants. Texas courts have repeatedly held that merely receiving funds from a Texas entity does not confer jurisdiction.[76]

Because none of the contacts alleged by Appellees involve the operative facts of this case, they failed to meet their burden to prove that a Texas court has specific personal jurisdiction over Appellants.

---

[76] *See, e.g.*, *Old Republic Nat. Title Ins. Co. v. Bell*, 549 S.W.3d 550, 564 (Tex. 2018) (holding that the transfer of "a fungible asset," (*i.e.*, the sales proceeds) had "no continuing presence in Texas" and was "of negligible significance for purposes of determining whether [a foreign defendant] had sufficient contacts in Texas.") (internal quotations omitted); *see also Willow Tree Consulting Grp., LLC v. S.D. Trust Co., LLC*, No. 05-22-00176-CV, 2023 WL 3749803 (Tex. App.—Dallas June 1, 2023, no pet.) (holding that "South Dakota Trust Company's receipt of funds from the [Texas defendants was] insufficient to constitute purposeful availment in Texas."); *Karaa v. Aramoonie*, No. 05-17-00571-CV, 2018 WL 1373958 (Tex. App.—Dallas Mar. 19, 2018, no pet.) (finding no jurisdiction in Texas where funds allegedly obtained through undue influence were sent from Texas and by a Texas resident to an out of state defendant).

## C. Appellees did not prove judicial estoppel.

As mentioned *supra*, the First Lawsuit was dismissed for improper venue.[77] In the business court, Appellees argued that Appellants' moving for dismissal based on venue created a judicial estoppel against a challenge to personal jurisdiction by Appellants in this action.[78] That argument is flawed factually and legally and provides no basis to affirm the denial of Appellants' special appearances.

The record shows that Appellees and two defendants in the underlying case, BPP HoldCo LLC and Primex Energy Corporation, were signatories to a Limited Partnership Agreement.[79] Section 14.1 of that agreement has a forum-selection clause, applicable to "each party to this Agreement," that requires disputes among them to be filed in the "exclusive jurisdiction of any United States District Court located in Dallas, Texas ...."[80]

In the First Lawsuit, Appellants and defendants BPP HoldCo LLC and Primex Energy Corporation jointly moved to dismiss based on that clause.[81] They argued that each Appellee was a "party to th[e] Agreement" and had sued other parties to that Agreement (BPP HoldCo LLC and Primex Energy Corporation) about matters related

---

[77] 1CR187–8.
[78] 1CR734–9.
[79] *See* 1CR116–28.
[80] 1CR114.
[81] 1CR176–85.

to that agreement.[82] The court agreed and dismissed the First Lawsuit without prejudice.[83]

In this case, Appellees made what they called a "judicial estoppel" argument.[84] They argued that because Appellants relied on the forum selection clause to obtain a dismissal in the First Lawsuit, it would be inconsistent for Appellants to now argue that the jurisdiction waiver in the forum selection clause does not apply to them.[85]

Judicial estoppel requires a sworn, inconsistent statement made in a prior judicial proceeding.[86] Appellees did not identify any such statement, and could not do so, given the wording of this clause.

By its terms, the forum selection clause applies only to signatories[87] and expressly disclaims any intent to bind affiliates of

---

[82] 1CR178–82.

[83] 1CR187–8.

[84] 1CR734–9.

[85] *Id.*

[86] *Galley v. Apollo Associated Servs., Ltd.*, 177 S.W.3d 523, 528 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

[87] 1CR114 (§ 14.1 (applying to "each party to this Agreement")); *see also Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 443 (Tex. 2017) ("[T]he circumstances in which nonsignatories can be bound to a forum-selection clause are rare."); *Rieder v. Woods*, 603 S.W.3d 86, 101 (Tex. 2020) ("[N]on-signatories may be subject to a forum-selection clause" only in limited circumstances when permitted by "the parties' chosen language."); *see also* 1CR1055–6 (acknowledging that "[n]one of these Defendants are alleged to be a party to the [Limited Partnership Agreement].").

signatories.[88] That language means that Appellants are not bound by it.

Moreover, just as they did in the First Lawsuit, Appellants relied on these terms in this case to argue that the Limited Partnership Agreement does **not** confer the trial court with jurisdiction over them.[89] Those positions are consistent with one another because they rely on the same unambiguous contract language.

Appellees did not allege, much less prove, any other theory to support a conclusion that the Limited Partnership Agreement prevents Appellants' personal-jurisdiction arguments in this case.

---

[88] *See* 1CR113–14 (§ 13.9 ("[E]ach Partner [] covenants, agrees and acknowledges . . . that it has no rights of recovery hereunder against, and no recourse hereunder . . . against any . . . Affiliate . . . of any Partner . . .")); *see also Pinto*, 526 S.W.3d at 445 (holding that the contract's benefits clause precluded assertion of a forum-selection clause by nonsignatories because the clause explicitly disclaimed any intent to extend the contract's "rights and remedies" to nonparties).

[89] *Compare* 1CR178 (Appellants' Motion to Dismiss the First Lawsuit) ("Plaintiffs alleges they were investors in Primexx, and thus partners in Primexx Energy Partners pursuant to the Partnership Agreement. They further allege that Defendant BPP Holdco was a partner and Defendant PEC was the general managing partner pursuant to the Partnership Agreement . . . Plaintiffs do not allege a basis for any duty owed by [Appellants] as none were parties to the Partnership Agreement.") *with* 1CR235 (Appellants' Special Appearances in Fourth Lawsuit) ("[Appellants] have been roped into this lawsuit even though they are not parties to the relevant Limited Partnership Agreement, did not owe [Appellees] any fiduciary duties, and are alleged to neither have played any role in the challenged asset sale nor to have committed any acts in Texas. Because [Appellees] have failed to allege any facts supporting the exercise of either general or specific jurisdiction over [Appellants], they should be dismissed from this lawsuit.").

Because they failed to prove the theory that they alleged, this line of argument provides no reason to affirm.[90]

*  *  *

The business court should have granted Appellants' special appearances because Appellees failed to sufficiently plead and prove the court's jurisdiction.

## Conclusion

For the foregoing reasons, this Court should reverse the business court and render judgment that Appellants' special appearances are granted; alternatively, it should reverse the business court on the waiver issue that was the subject of its opinion, render judgment that Appellants did not waive their special appearances, and remand for consideration of the remaining issues about personal jurisdiction.

---

[90] *See CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 895 (Tex. App.—Dallas 2007, pet. denied) ("When a party seeks to enforce a forum-selection clause against a nonsignatory to the contract containing the forum-selection clause, that party bears the burden to prove the theory upon which it relies to bind the nonsignatory to the contract.").

DATE: April 9, 2025

Respectfully submitted,

/s/ David S. Coale

Christopher J. Schwegmann
  Texas Bar No. 24051315
  cschwegmann@lynnllp.com
David S. Coale
  Texas Bar No. 00787255
  dcoale@lynnllp.com
Christopher W. Patton
  Texas Bar No. 24083634
  cpatton@lynnllp.com
Yaman Desai
  Texas Bar No. 24101695
  ydesai@lynnllp.com
Kyle A. Gardner
  Texas State Bar No. 24116412
  kgardner@lynnllp.com
Jessica D. Cox
  Texas Bar No. 24114769
  jcox@lynnllp.com
**Lynn Pinker Hurst &**
**  Schwegmann LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:  (214) 981-3800
Facsimile:   (214) 981-3839

***Attorneys for Appellants***

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served on all counsel of record via eFileTexas on April 9, 2025.

/s/ David S. Coale
David S. Coale

## Certificate of Compliance

I certify that this Brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 6,168 words, including words in screenshots, and excluding parts exempted by Tex. R. App. P. 9.4(i)(1).

April 9, 2025

/s/ David S. Coale
David S. Coale

# Appendices

| No. | Date | Description |
|-----|------|-------------|
| A | January 24, 2025 | Business Court's Order on Appellants' Special Appearances (1CR754–75) |
| A | February 10, 2025 | Business Court's Memorandum Opinion and Order on Appellants' Special Appearances (1CR1045–79) |
| B | Current | Texas Rule of Civil Procedure 120a |



E-filed in the Office of the Clerk
for the Business Court of Texas
1/17/2025 11:30 AM
Accepted by: Beverly Crumley
Case Number: 24-BC01B-0010



The Business Court of Texas,
1st Division

| | | |
|---|---|---|
| PRIMEXX ENERGY OPPORTUNITY FUND, LP and PRIMEXX ENERGY OPPORTUNITY FUND II, LP, *Plaintiffs*, | § § § § § § § | |
| v. | § § | Cause No. 24-BC01B-0010 |
| PRIMEXX ENERGY CORPORATION, M. CHRISTOPHER DOYLE, ANGELO ACCONCIA, BLACKSTONE HOLDINGS III LP, BLACKSTONE EMA II LLC, BMA VII LLC, BLACKSTONE ENERGY MANAGEMENT ASSOCIATES II LLC, BLACKSTONE ENERGY PARTNERS II LP, BLACKSTONE MANAGEMENT ASSOCIATES VII LLC, BLACKSTONE CAPITAL PARTNERS VII LP, BCP VII/BEP II HOLDINGS MANAGER LLC, BX PRIMEXX TOPCO LLC, and BPP HOLDCO LLC, *Defendants* | § § § § § § § § § § § § § § § § § § § § | |

## ORDER

Before the court are special appearances by Blackstone Holdings III LP, Blackstone EMA II LLC, BMA VII LLC, Blackstone Energy Management Associates II LLC, Blackstone Energy Partners II LP, Blackstone Management Associates VII LLC, Blackstone Capital Partners VII LP, BCP VII/BEP II Holdings Manager LLC, and BX Primexx Topco LLC. The court considered those special appearances, the responses, the pleadings, the material on file, and counsels' arguments.

Based on the above, the court concludes that those defendants consented to personal jurisdiction in this proceeding. Therefore, the court **DENIES** their special appearances.

So ORDERED.

_____
BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED: January 17, 2025

**B**

2025 Tex. Bus. 5



The Business Court of Texas,
1st Division

| | | |
|---|---|---|
| PRIMEXX ENERGY OPPORTUNITY FUND, LP and PRIMEXX ENERGY OPPORTUNITY FUND II, LP, *Plaintiffs*, <br><br> v. <br><br> PRIMEXX ENERGY CORPORATION, M. CHRISTOPHER DOYLE, ANGELO ACCONCIA, BLACKSTONE HOLDINGS III LP, BLACKSTONE EMA II LLC, BMA VII LLC, BLACKSTONE ENERGY MANAGEMENT ASSOCIATES II LLC, BLACKSTONE ENERGY PARTNERS II LP, BLACKSTONE MANAGEMENT ASSOCIATES VII LLC, BLACKSTONE CAPITAL PARTNERS VII LP, BCP VII/BEP II HOLDINGS MANAGER LLS, BX PRIMEXX TOPCO LLC, and BPP HOLDCO LLC, *Defendants* | § § § § § § § § § § § § § § § § § § § § § § § § § | Cause No. 24-BC01B-0010 |

[¶ 1] Before the court are special appearances by Blackstone Holdings III LP, Blackstone EMA II LLC, BMA VII LLC, Blackstone Energy Management Associates II LLC, Blackstone Energy Partners II LP, Blackstone Management Associates VII LLC, Blackstone Capital Partners VII LP, BCP VII/BEP II Holdings Manager LLC, and BX Primexx Topco LLC (Blackstone Defendants).[1] Having considered the parties' arguments, pleadings, special appearances, submissions, and relevant law, the court signed an Order on January 17, 2025, denying the Blackstone Defendants' special appearances. This opinion follows.[2]

[¶ 2] The dispositive issue is whether filing an answer in an earlier iteration of the dispute in one court consents to personal jurisdiction to litigate

---

[1] Each Blackstone Defendant is alleged to be a "direct subsidiary" of Blackstone, Inc. 10/25/24 Plaintiffs' Original Petition (Pet.) ¶ 17. Defendant BPP HoldCo LLC did not join its fellow affiliates in filing a special appearance and is excluded from the definition of "Blackstone Defendants."

[2] The court entered its Order denying Blackstone Defendants' special appearances on January 17, 2025. On January 24, 2025, Plaintiffs filed a First Amended Petition. The thrust of Plaintiffs' amendment to its pleading was to add Blackstone, Inc. as a defendant. Because the court's Order was based on the Original Petition, this Memorandum Opinion and Order addresses Plaintiffs' Original Petition.

the same dispute in a later-filed suit in a different court in the same state. The court concludes that it does because the focus is on the defendants' consent to litigate the dispute in the state—not a particular court within the state.

## I. Background

[¶ 3] This case arises from a private equity investment in a limited partnership. Plaintiffs assert direct and indirect liability claims against Defendants for breaching statutory and contract duties in forcing a sale of the partnership's business to a third party. The court discusses only those facts relevant to the Blackstone Defendants' special appearances.

### A. Plaintiffs' Original Petition

[¶ 4] Primexx Resource Development, LLC (PRD) was an energy company operating in the Delaware Basin.[3] "Blackstone"[4] is alleged to have acquired a majority interest in PRD through Defendant BPP HoldCo LLC by investing in a partnership called Primexx Energy Partners, Ltd. (PEP).[5] A

---

[3] Pet. ¶ 1.

[4] Plaintiffs' Original Petition inconsistently refers to "Blackstone" to mean either (i) every defendant that is alleged to be a subsidiary of Blackstone (*see* Pet. ¶s 1 fn.1, 37) or (ii) just Defendant BPP HoldCo LLC (Pet. ¶ 27). In most instances, it appears that Plaintiffs intend "Blackstone" to refer to every Blackstone, Inc.-affiliated defendant.

[5] Pet. ¶s 1, 38.

Third Amended and Restated Limited Partnership Agreement (TAPA) governs investments in PEP.[6]

[¶ 5] Plaintiffs are Primexx Energy Opportunity Fund LP (PEOF I) and Primexx Energy Opportunity Fund II (PEOF II). PEOFs were PEP limited partners.[7]

[¶ 6] Beginning in June 2021, Callon Petroleum Company made "a series of lowball offers to purchase Primexx."[8] PEOFs claim that the Callon offer "almost exclusively benefitted [Blackstone] while destroying the value for all other investors (including [PEOF]s)."[9]

[¶ 7] Despite the above, Blackstone announced the sale Friday, July 30, 2021.[10] Blackstone demanded that the board approve the sale by Monday, August 2, 2021.[11] The sale closed on October 1, 2021.[12] PEOFs thereafter

---

[6] Pet. ¶s 1, 38.

[7] Pet. ¶s 38, 51.

[8] Pet. ¶ 2.

[9] Pet. ¶ 3.

[10] Pet. ¶ 3.

[11] Pet. ¶ 3.

[12] Pet. ¶ 80.

sued Defendants, claiming they breached their contract and statutory duties to act in good faith and with loyalty and due care.[13]

## B. Procedural History

### 1. First Action

[¶ 8] PEOFs originally sued in Dallas County District Court on December 12, 2022 (First Action).[14] As discussed in part below, PEOFs argue that the instant case is effectively the same dispute as the First Action. The First Action included every Blackstone Defendant.

[¶ 9] Blackstone Defendants filed answers in the First Action without filing special appearances.[15] They also moved to dismiss the First Action based on a TAPA forum-selection clause.[16] The court granted that motion and dismissed the First Action on March 29, 2023.[17]

---

[13] Pet. ¶ 4.

[14] Pet. ¶ 5 (citing *Primexx Energy Opp. Fund, LP et al. v. Primexx Energy Corp. et al.*, No. DC-22-17122 (District Court of Dallas County, Texas, 298th Judicial District)).

[15] Plaintiffs' Opposition to Blackstone Defendants' Special Appearances (Opp. to Blackstone SA) Exhibit 2.

[16] Pet. ¶ 5; Pet. Exhibit 2.

[17] Pet. ¶ 6; Pet. Exhibit 3.

### 2. Second Action

[¶ 10] PEOFs re-filed in the United States District Court for the Northern District of Texas on May 4, 2023 (Second Action).[18] PEOFs added Blackstone Inc. executive Angelo Acconcia as a defendant, but otherwise the parties remained the same.[19] That court later dismissed the case *sua sponte* for lack of subject matter jurisdiction.[20]

### 3. Third Action

[¶ 11] PEOFs again sued in Dallas County on July 31, 2023 (Third Action).[21,22] Angelo Acconcia and the Blackstone Defendants filed special appearances.[23]

[¶ 12] Nonspecially appearing defendants filed an unopposed motion to transfer from the 68th Judicial District to the 298th Judicial District.[24] They

---

[18] Pet. ¶ 7 (citing *Primexx Energy Opp. Fund, LP et al. v. Primexx Energy Corp. et al.*, No. 3:23-cv-00985-K (N.D. Tex. 2023)).

[19] Pet. ¶ 7.

[20] Pet. ¶s 8–9; Pet. Exhibits 4, 5.

[21] Pet. ¶ 10 (citing *Primexx Energy Opp. Fund, LP et al. v. Primexx Energy Corp. et al.*, DC-23-10916 (District Court of Dallas County, Texas, 68th Judicial District)).

[22] PEOFs' petition states that it filed again in the 298th Judicial District, but this is contradicted by Opp. to Blackstone SA Exhibit 3 (Motion to Transfer from the 68th to 298th Judicial District Court of Dallas County).

[23] Pet. ¶ 10.

[24] Opp. to Blackstone SA Exhibit 3.

1050

stated that "[PEOF]s filed the instant action, alleging the same claims against the same parties arising out of the same transaction as the First Action that the 298th District Court previously dismissed … (while also adding one additional defendant, Angelo Acconcia)."[25] "Indeed, many of the allegations in the instant action are word-for-word verbatim [] in the First Action."[26]

[¶ 13] The case apparently was later transferred to the 298th District Court.[27]

[¶ 14] PEOFs filed a Notice of Removal to the First Business Court Division.[28] All defendants consented to the removal.[29] This court ordered the parties to submit briefing regarding what effect, if any, Section 8 of Acts 2023, 88th Leg., ch. 380 (H.B. 19) had on the removal of the Third Action.[30] The parties agreed to dismiss the removed action without prejudice and the case was dismissed on October 18, 2024.[31]

---

[25] Opp. to Blackstone SA Exhibit 3 at 2.

[26] Opp. to Blackstone SA Exhibit 3 at 2.

[27] *See* Pet. Exhibit 6 at 5 (Plaintiffs' Notice of Removal to the Business Court).

[28] Pet. ¶ 11 (citing Pet. Exhibit 6).

[29] Pet. ¶ 11.

[30] Pet. ¶ 11.

[31] Pet. ¶ 11.

### 4. Instant Action

[¶ 15] PEOFs filed the instant suit on October 25, 2024. This Original Petition is substantially identical to the petition in the Third Action that the parties previously tried to remove here, which the nonspecially appearing defendants had in turn stated "alleg[ed] the same claims against the same parties arising out of the same transaction as the First Action."[32] Accordingly, the active pleading here asserts the same causes of action arising out of the same transaction as the First Action against the same Blackstone Defendants.

## C. Jurisdictional Fact Allegations

[¶ 16] PEOFs' petition alleges generally as to all "Defendants":

This Court has personal jurisdiction over all Defendants because they consented to personal jurisdiction in Dallas, Texas in the Third Amended and Restated Limited Partnership Agreement, which established Dallas as the principal place of business for the partnership. All Defendants continuously and systematically did business in the State of Texas, have purposefully availed themselves of the privilege of conducting activities inside the State of Texas, and invoked the benefits and protections of the laws of the State of Texas.[33]

---

[32] *See* 24-BC01B-0004, APPX_0001–0036 to 9/27/24 Notice of Removal to Business Court; Opp. to Blackstone SA Exhibit 3 at 2.

[33] Pet. ¶ 31.

1052

[¶ 17] None of the Blackstone Defendants are alleged to be Texas residents.[34] Instead, PEOFs allege that "[a]ll of the Blackstone entities named as Defendants are direct subsidiaries of Blackstone Inc., a corporation with citizenship in New York … and Delaware."[35] Based on the corporate structure shown below, PEOFs allege that "every Blackstone entity named here is, at a minimum, a citizen of New York and Delaware":

---

[34] Pet. ¶s 17–26.

[35] Pet. ¶ 17.



[¶ 18] Based on the above diagram, PEOFs allege that "Blackstone used a combination of subsidiaries to manage BPP HoldCo LLC," which was a limited partner in the same partnership as PEOFs.[36]

[¶ 19] In opposing the Blackstone Defendants' special appearances, PEOFs identify specific allegations against each specially appearing Defendant.[37]  PEOFs' allegations distill to two groups: (i) those against Blackstone Energy Partners II LP and Blackstone Capital Partners VII LP as "Blackstone Investors," and (ii) those against all other Blackstone Defendants.

[¶ 20] PEOFs allege that (i) the TAPA referenced Blackstone Investors by name and stated that capital for the agreement would come from them and (ii) a noncompetition provision in the TAPA specifically refers to the Blackstone Investors.[38]  However, neither one is alleged to be a party to the TAPA.

[¶ 21] PEOFs allege the remaining Blackstone Defendants each (i) received millions of Callon shares in consideration for the Callon sale; (ii) is in

---

[36] Pet. ¶s 40–41.

[37] Opp. to Blackstone SA at 6–10.

[38] Opp. to Blackstone SA at 7–8.

the corporate chain above BPP HoldCo LLC, which signed the TAPA; and (iii) is listed on SEC filings in connection with the sale.[39] None of these Defendants are alleged to be a party to the TAPA.

## D. Parties' Arguments

[¶ 22] Defendants argue that PEOFs failed to allege sufficient, particularized jurisdictional facts supporting specific personal jurisdiction over any of the Blackstone Defendants (general jurisdiction was not asserted).[40] Defendants further argue that even assessed together, PEOFs' generalized allegations do not support specific jurisdiction over any specially appearing Defendant because PEOFs make no assertion that they performed any acts in Texas.[41] Defendants further argue that the few specific allegations concerning the Blackstone Investors and the remaining Blackstone Defendants listed above are not substantively connected to the challenged asset sale.[42]

---

[39] Opp. to Blackstone SA at 7–10.

[40] Defendants' Verified Special Appearances (Blackstone SA) at 7.

[41] Blackstone SA at 7–8.

[42] Blackstone SA at 9–10.

[¶ 23] PEOFs respond that the Blackstone Defendants conducted substantial business in Texas in that they (i) had direct involvement in the investment in PRD, a Texas oil company, and the sale of those Texas oil assets at issue; (ii) either invested millions of dollars into PRD/PEP or received millions of shares from the Callon sale; (iii) are all in the same direct chain of entities that manage BPP HoldCo LLC, a PEP limited partner; and (iv) were involved in the TAPA and investment in PRD/PEP and its governance.[43]

[¶ 24] PEOFs further argue that regardless of their forum contacts, the Blackstone Defendants either (i) are estopped from arguing that the TAPA's forum-selection clause does not apply to them because they sought and received affirmative relief in the First Action by arguing the same or (ii) waived their right to object to personal jurisdiction by making a general appearance in the First Action.[44]  Alternatively, PEOFs seek a continuance to conduct jurisdictional discovery, which they say Defendants avoided.[45]

---

[43] Opp. to Blackstone SA at 4–5, 7–10.

[44] Opp. to Blackstone SA at 16–20.

[45] Opp. to Blackstone SA at 28–29.

1057

[¶ 25] Defendants reply that PEOFs have not shown that any Blackstone Defendants were involved in the Callon sale.[46] Defendants further argue that the TAPA was created five years before the Callon sale and lacks connection to the asserted claims.[47] Defendants argue they are not estopped because they have consistently argued PEOFs were signatories to the TAPA and bound by the forum-selection clause when bringing claims under the TAPA.[48]

[¶ 26] Regarding waiver, Defendants rely on *James v. Illinois Cent. R.R. Co.*, 965 S.W.2d 594 (Tex. App.—Houston [1st Dist.] 1998, no pet.) and *Megadrill Services Ltd. v. Brighouse*, 556 S.W.3d 490 (Tex. App.—Houston [14th Dist.] 2018, no pet.) for the premise that a defendant does not consent to jurisdiction merely by defending prior suits in Texas.[49]

[¶ 27] At the November 21, 2024, hearing, Defendants referred to a third case, *Grynberg v. M-I L.L.C.*, 398 S.W.3d 864 (Tex. App.—Corpus Christi

---

[46] Defendants' Omnibus Reply in Support of Special Appearances (Reply ISO Blackstone SA) at 2.

[47] Reply ISO Blackstone SA at 2.

[48] Reply ISO Blackstone SA at 4–5.

[49] Reply ISO Blackstone SA at 5–7.

2012, pet. denied), for the point that appearing in matters "ancillary" and prior to the main suit does not waive a personal jurisdiction challenge.[50]

[¶ 28] The court concludes that the Blackstone Defendants consented to Texas' jurisdiction in this action (*i.e.*, waived their right to object to personal jurisdiction).

## II.  Applicable Law

### A. Special Appearances

[¶ 29] Texas Rule of Civil Procedure 120a governs special appearances. It provides:

> a special appearance may be made by any party either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State.

TEX. R. CIV. P. 120a(1).

[¶ 30] A special appearance may be made as to "an entire proceeding" or any severable claim involved therein. *Id.* Every appearance, prior to judgment, not in compliance with this rule is a general appearance. *Id.*

---

[50] 11/21/24 Hr. Trs. at 123:20–124:5.

1059

[¶ 31] A party availing itself of Rule 120a must strictly comply with its terms because failure to do so results in waiver. *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 136 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

[¶ 32] Thus, a party waives its special appearance when it (i) invokes the court's judgment on any question other than the court's jurisdiction; (ii) recognizes by its acts that an action is properly pending; or (iii) seeks affirmative action from the court. *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam) (citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)). But a party does not waive its jurisdictional challenge by seeking affirmative relief consistent with the special appearance. *Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 225 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

## B. *In Personam* Jurisdiction

[¶ 33] A nonresident defendant is subject to personal jurisdiction in Texas if (i) the Texas long-arm statute authorizes the exercise of jurisdiction and (ii) the exercise of jurisdiction does not violate federal or state constitutional due process guarantees. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010).

1060

[¶ 34] The Texas long-arm statute's broad "doing business" language allows the trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).

[¶ 35] Therefore, courts need "only analyze whether [the defendant]'s acts would bring [the defendant] within Texas' jurisdiction consistent with constitutional due process requirements." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009).

[¶ 36] A state's exercise of jurisdiction comports with federal due process if (i) the nonresident defendant has "minimum contacts" with the state and (ii) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

### 1.    Minimum Contacts

[¶ 37] A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the

forum state, thus invoking the benefits and protections of its laws." *Retamco*, 278 S.W.3d at 338.

[¶ 38] Courts consider three issues in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Thus, sellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities. Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* at 339 (quoting *Moki Mac*, 221 S.W.3d at 575); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

[¶ 39] The minimum-contacts analysis focuses on the "quality and nature of the defendant's contacts," not quantity. *Retamco*, 278 S.W.3d at 339.

[¶ 40] "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.* at 338 (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)).

1062

### a. Specific Personal Jurisdiction

[¶ 41] Specific jurisdiction requires that "(1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Retamco*, 278 S.W.3d at 338 (buying Texas real estate) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579; *Guardian Royal*, 815 S.W.2d at 228 (specific jurisdiction focuses on "the relationship among the defendant, the forum and the litigation").

[¶ 42] For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, "there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. The "operative facts" of a litigation are those that "will be the focus of the trial" and "will consume most if not all of the litigation's attention." *Id.* at 585.

[¶ 43] Specific jurisdiction requires courts to analyze jurisdictional contacts on a claim-by-claim basis. *Moncrief Oil Int'l Inc. v. OAO Gazprom*,

1063

414 S.W.3d 142, 150 (Tex. 2013); *see also Seiferth v. Helicopteros Atuneros*, Inc., 472 F.3d 266, 274–75 (5th Cir. 2006) ("If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts."). But a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contact. *Moncrief*, 414 S.W.3d at 150–51.

## 2. Fair Play and Substantial Justice

[¶ 44] If the minimum contacts requirements are met, it is "rare" for exercising personal jurisdiction to not comply with fair play and substantial justice. *Retamco*, 278 S.W.3d at 341. Nonetheless, courts still consider factors to ensure that exercising jurisdiction does not offend traditional notions of fair play and substantial justice:

> (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (citing *Burger King*, 471 U.S. at 477–78).

1064

### 3. The Parties' Burdens

[¶ 45] The plaintiff "bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Kelly*, 301 S.W.3d at 658. If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute the defendant need only prove that it does not live in Texas to negate jurisdiction. *Id.* at 658–59. "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* at 658.

[¶ 46] "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* Defendant can negate jurisdiction on either a factual or legal basis. *Id.* at 659.

[¶ 47] Factually, a defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* The plaintiff must then respond with its own evidence that affirms its allegations or else risk dismissal. *Id.* However, the court considers "additional evidence," including, "stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes,

1065

and any oral testimony," only to the extent it supports or undermines the pleadings' allegations. *Id.* at 658 n.4 (citing TEX. R. CIV. P. 120a(3)). If the plaintiff's evidence is not within the scope of the pleadings' factual allegations, the plaintiff should amend the pleadings for consistency. *Id.* at 659 n.6.

[¶ 48] Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction either (i) because the defendant's contacts with Texas fall short of purposeful availment (including that the claims do not arise from the contacts) or (ii) that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.* at 659.

## III. Discussion

### A. Blackstone Defendants' General Appearance

[¶ 49] To begin, "personal jurisdiction is a 'waivable right' and [a defendant] may give 'express or implied consent to the personal jurisdiction of the court.'" *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.—Dallas 2010, no pet.) (quoting *Burger King Corp.*, 471 U.S. at 473 n.14). "To the extent a party has consented to jurisdiction in a particular forum, the trial court's exercise of personal jurisdiction over it does not violate due process

1066

even in the absence of contacts with Texas." *Id.*; *Megadrill*, 556 S.W.3d at 497.

[¶ 50] Here, Blackstone Defendants made general appearances in the First Action by seeking affirmative action from the court and filing an answer without filing special appearances. *Exito Elecs.*, 142 S.W.3d at 304; TEX. R. CIV. P. 120a(1) ("Every appearance, prior to judgment, not in compliance with this rule is a general appearance.").

[¶ 51] First, each Blackstone Defendant moved to dismiss the First Action, seeking affirmative relief from the court and invoking its judgment regarding the TAPA's forum-selection clause.[51] That motion was granted, and the First Action was dismissed. Second, the Blackstone Defendants filed an answer in the First Action not subject to any jurisdictional challenge.[52]

[¶ 52] During the November 21, 2024, hearing, their counsel argued for the first time that PEOFs' petition in the First Action—through a drafting error or otherwise—failed to actually articulate any claims against the Blackstone Defendants.[53]

---

[51] Opp. to Blackstone SA Exhibit 1.

[52] Opp. to Blackstone SA Exhibit 2.

[53] 11/21/24 Hr. Trs. At 122:11–123:11 (pointing out that the Petition in the First Action asserted claims against "Blackstone," which was defined as meaning only "BPP HoldCo").

[¶ 53] Regardless, it is quintessential that "by filing [an] answer, unconditioned by a special appearance" a defendant "acknowledge[s] that the case [i]s properly pending before *a Texas court*." *Massachusetts Bay Ins. Co. v. Adkins*, 615 S.W.3d 580, 600 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (emphasis original); *Exito Elecs.*, 142 S.W.3d at 304. Blackstone Defendants' last-minute attempt to find fault in PEOFs' petition does not erase the fact that they answered in the First Action, thereby entering a general appearance and waiving any objection to personal jurisdiction. *PetroSaudi*, 617 S.W.3d at 136; *Nationwide Distribution Servs.*, 496 S.W.3d at 224.

[¶ 54] Therefore, Blackstone Defendants waived their right to object to personal jurisdiction in the First Action and consented to litigate these claims in at least the 298th District Court of Dallas County, Texas.

## B. Blackstone Defendants' Consent to Litigate these Claims in Texas

[¶ 55] Because a special appearance may be made as to "an entire proceeding" or otherwise is waived, TEX. R. CIV. P. 120a(1), one way to phrase

---

The Court notes that in Defendants' reply, they argued a contradictory position. *See* Reply ISO Blackstone SA at 4 ("In DC-22-17122, PEOF asserted claims under the LPA against both signatories and nonsignatories (*the Attenuated Blackstone Defendants among them*)." (emphasis added)).

the issue is whether Blackstone Defendants made a general appearance in only the First Action, or if the "entire proceeding" includes the present suit.

[¶ 56] According to Blackstone Defendants, the First Action "was a different cause number, different case, different court" and therefore effectively a different proceeding with respect to Rule 120a.[54] They further argue that finding that they consented to personal jurisdiction in this case based on participation in a prior, separate lawsuit would "expand the doctrine[] of … waiver to novel lengths."[55]

### 1. Applicable Law

[¶ 57] Several courts in Texas hold that "[v]oluntarily filing a lawsuit in a jurisdiction is a purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit when the lawsuits arise from the same general transaction." *Primera Vista S.P.R. de R.L. v. Banca Serfin, S.A. Institucion de Banca Multiple Grupo Financiero Serfin*, 974 S.W.2d 918, 926 (Tex. App.—El Paso 1998, no pet.); *see also Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de CV*, 277 F.

---

[54] 11/21/25 Hr. Trs. At 119:19–123:19.

[55] Reply ISO Blackstone SA at 2, 5–7.

Supp. 2d 654, 667 (N.D. Tex. 2002); *Zamarron v. Shinko Wire Co., Ltd.*, 125 S.W.3d 132, 143 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Those cases trace to *General Contracting & Trading Co. v. Interpole*, 940 F.2d 20 (1st. Cir. 1991).

[¶ 58] In *Interpole*, General Contracting & Trading Co. (GCT) sued Interpole, Inc. in New Hampshire's federal district court seeking damages associated with the delayed delivery of GTC's order (Suit No. 1). *Id.* at 21. Interpole filed a third-party complaint for indemnity against Transamerican Steamship Corporation (Trastco), to which Trastco failed to respond, leading to a default against Trastco in Suit No. 1. *Id.* Trastco then brought a separate suit against Interpole in the same federal district court, charging fraud and misrepresentation regarding the same overall transaction (Suit No. 2). *Id.* Trastco subsequently challenged the default judgment in Suit No. 1 by claiming the court never had personal jurisdiction over it. *Id.* at 22.

[¶ 59] However, the First Circuit held that a "defendant may manifest consent to a court's *in personam* jurisdiction in any number of ways" and that "a party's consent to a court's jurisdiction may take place prior to the suit's institution … at the time suit is brought …, or after suit has started." *Id.* So, by bringing Suit No. 2, Trastco submitted itself to the district court's

1070

jurisdiction in Suit No. 1 because "Trastco surrendered any jurisdictional objections to claims that Interpole wished to assert against it in consequence of the same transaction or arising out of the *same nucleus of operative facts*." *Id.* at 23 (emphasis added).

[¶ 60] The court reasoned "a ruling that Trastco did not submit to the court's jurisdiction in Suit No. 1 when it instituted Suit No. 2 would produce an unjust asymmetry, allowing a party (here, Trastco) to enjoy the full benefits of access to a state's courts *qua* plaintiff, while nonetheless retaining immunity from the courts' authority *qua* defendant in respect to claims asserted by the very party it was suing (here, Interpole)." *Id.*; *see also id.* at 24 ("There is no conceivable unfairness here. The choice to sue in New Hampshire, or to abstain, was Trastco's.").

[¶ 61] Thus, *Interpole* is (and its Texas progeny are) like the present case because Blackstone Defendants voluntarily appeared and chose to litigate claims arising from the Callon transaction here.

[¶ 62] Further, as discussed next, *Massachusetts Bay Ins. Co. v. Adkins* negates Defendants' "different cause number, different case, different court" argument. 615 S.W.3d at 598.

1071

### 2. *Massachusetts Bay*

[¶ 63] *Massachusetts Bay* involved an underlying asbestos-related personal injury lawsuit filed in 1995 in Jefferson County, Texas and a transfer in 2017 to the 11th District Court of Harris County for pretrial matters (the MDL court). 615 S.W.3d at 584. Massachusetts Bay Insurance Company appealed the MDL court's order denying its special appearance. *Id.* The MDL court did in part because Massachusetts Bay waived its special appearance in the underlying litigation. *Id.*

[¶ 64] Specifically, on August 3, 2017, plaintiffs filed their forty-first amended petition in the Jefferson County trial court. *Id.* at 590.

[¶ 65] On October 10, 2017, a fellow defendant filed a notice of transfer in the Jefferson County court stating that the case had been transferred to the MDL court. *Id.* at 591.

[¶ 66] The next day, Massachusetts Bay filed an answer in the Jefferson County case without objecting to personal jurisdiction. *Id.* at 592. Massachusetts Bay later filed a special appearance in the MDL court on June 20, 2018. *Id.*

[¶ 67] Plaintiffs argued that Massachusetts Bay waived personal jurisdiction in the MDL case by earlier filing an answer in the Jefferson County

court that did not object to personal jurisdiction. *Id.* at 594. Massachusetts Bay responded that (i) its June 2018 special appearance was the first pleading that it filed in the MDL court, (ii) it was "a new proceeding with a new cause number," (iii) and its previous answer was effectively a nullity because the Jefferson County court lacked jurisdiction over the suit as of October 10, 2017. *Id.* at 594–95, 598.

[¶ 68] To begin, the *Massachusetts Bay* court disagreed that the Jefferson County court was completely deprived of jurisdiction upon transfer to the MDL court, and therefore Massachusetts Bay's answer was not a nullity. *Id.* at 598 (discussing TEX. R. JUD. ADMIN. 13.5(b) & 13.11(f)(2)).

[¶ 69] Moreover, the court disagreed that the proceeding under a separate cause number in the MDL court was a "new" proceeding for Rule 120a. *Id.* at 599 ("Rather than its being a separate proceeding, we conclude that the proceeding in the MDL court in Harris County was simply a continuation of the proceeding in Jefferson County, albeit in a different court in a different county.").

[¶ 70] Additionally, the court held that the "purpose of a special appearance [] is to contest the ability of all courts in the forum state—not a particular district court—to exercise personal jurisdiction over a defendant."

1073

*Id.* at 599–600 (citing *Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 794 (Tex. App.—Houston [1st Dist.] 2000, no pet.)).

[¶ 71] Further, Rule 120a(1) states that a special appearance may be made "for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process *issued by the courts of this State*," not only that particular court of the State. *Id.* at 600 (quoting TEX. R. CIV. P. 102a(1) (emphasis original to opinion)).

[¶ 72] Thus, "[w]hat is relevant is that, by filing its answer, unconditioned by a special appearance, Massachusetts Bay acknowledged that the case was properly pending before *a Texas court*." *Id.* (emphasis original).

[¶ 73] Likewise, the Blackstone Defendants acknowledged that *these claims* were proper as to *these defendants* in a Texas court when they answered in the First Action without first filing special appearances.

### 3. Same Proceeding

[¶ 74] This action is essentially "a continuation of the proceeding" of the First Action. *See* 615 S.W.3d at 599.

[¶ 75] That is, the plaintiffs are the same, the defendants are the same (with the sole addition of Mr. Acconcia), and Blackstone Defendants' co-

1074

defendants previously stated that the Third Action "alleg[ed] the same claims against the same parties arising out of the same transaction as the First Action" and that "[i]ndeed, many of the allegations in the [Third Action] are word-for-word verbatim of the allegations in the First Action."[56]

[¶ 76] And the instant action is substantially identical to the petition in the Third Action that parties previously tried to remove to this court. But for the cause number and the particular court, this action is essentially the same action as the first one filed on December 12, 2022, in the 298th Judicial District Court for Dallas County in which Blackstone Defendants made a general appearance.

[¶ 77] Accordingly, the Blackstone Defendants' general appearance in the First Action waived their right to object to personal jurisdiction here.

### 4. The Blackstone Defendants' Cases

[¶ 78] Blackstone Defendants cited cases "reject[ing] the notion that a foreign defendant waives its right [to] object to personal jurisdiction, or consents to jurisdiction, in Texas by having defended other lawsuits in Texas." *Megadrill*, 556 S.W.3d at 498. But those cases are factually distinguishable.

---

[56] Opp. to Blackstone SA Exhibit 3.

### *James v. Illinois Central*

[¶ 79] *James v. Illinois Central*, held that "consent, as a basis for obtaining personal jurisdiction over a foreign corporation, has been abandoned," citing the Supreme Court's decision *McGee v. Int'l Life. Ins. Co.*, 355 U.S. 220, 222 (1957).  965 S.W.2d at 599.  The court therefore reasoned that "[r]egardless of its involvement in other litigation, a court's exercise of personal jurisdiction … depends upon minimum contacts analysis and considerations of fair play and substantial justice."  *Id.* at 599–600.

[¶ 80] However, the court's holding is contrary to the Supreme Court's more recent decision in *Burger King* and a long line of Texas cases, including those the Blackstone Defendants cited, holding that "[t]o the extent a party has consented to jurisdiction in a particular forum, the trial court's exercise of personal jurisdiction over it does not violate due process even in the absence of contacts with Texas."  *See, e.g.*, *Megadrill*, 556 S.W.3d at 497 (citing *Burger King*, 471 U.S. at 473 n.14).

[¶ 81] Finally, the *James* court never said the previous lawsuits there were similar or related to the suit for which waiver was alleged, merely referring to "other lawsuits in Texas."  965 S.W.2d at 599, n.2.

### *Megadrill v. Brighouse*

[¶ 82] *Megadrill* makes that distinction. 556 S.W.3d at 497. There, the plaintiff alleged that Megadrill waived its right to object to personal jurisdiction because it "actively engag[ed] in litigation in Texas." *Id.* However, that court noted several times that the prior lawsuits plaintiff relied on to allege waiver were "in an unrelated matter" and "unrelated to the present one." *Id.*

[¶ 83] After reviewing cases from other jurisdictions, the court held that plaintiff "cites no authority supporting his position that a party's consent to jurisdiction in one case extends to other *unrelated lawsuits* in the same jurisdiction." *Id.* at 498 (emphasis added); *see also id.* (distinguishing *Interpole* and other cases finding waiver where "the affirmative lawsuit was based on the same transaction that was at issue in the subject litigation, or at least a related transaction").

[¶ 84] Thus, the court held that "as a matter of law that [Megadrill] did not consent to personal jurisdiction in the present action by previously filing a federal court lawsuit in Texas on an *unrelated matter*." *Id.* at 499 (emphasis added).

1077

[¶ 85] Accordingly, Blackstone Defendants' reliance on *Megadrill* is misplaced because the First Action is related to the present action—it is essentially the same action.

### *Grynberg v. M-I L.L.C.*

[¶ 86] Finally, Blackstone Defendants' reliance on *Grynberg* is likewise misplaced. 398 S.W.3d at 878. Although *Gyrnberg* and a line of cases hold that appearing in matters "ancillary" and prior to the main suit does not waive a personal-jurisdiction challenge, the examples of "ancillary" matters the court cited are distinguishable: (i) filing a Rule 11 agreement; (ii) entering into an agreed collateral order; (iii) filing a mandamus petition and motion for emergency relief; (iv) filing a notice of oral hearing on the motion to dissolve writ of garnishment; (v) agreeing to extend temporary restraining and temporary injunction orders; (vi) counsel attending a temporary restraining order hearing; or (vii) engaging in discovery before the special-appearance hearing. *See id.* None of these examples resemble filing an answer in a virtually identical lawsuit.

## IV.    Conclusion

[¶ 87] For these reasons, the court previously denied the Blackstone Defendants' special appearances on January 17, 2025.

_____
BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED:  February 10, 2025.

C

Vernon's Texas Rules Annotated
  Texas Rules of Civil Procedure
    Part II. Rules of Practice in District and County Courts
      Section 5. Citation

TX Rules of Civil Procedure, Rule 120a

Rule 120a. Special Appearance

Currentness

1. Notwithstanding the provisions of Rules 121, 122 and 123, a special appearance may be made by any party either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State. A special appearance may be made as to an entire proceeding or as to any severable claim involved therein. Such special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion; provided however, that a motion to transfer venue and any other plea, pleading, or motion may be contained in the same instrument or filed subsequent thereto without waiver of such special appearance; and may be amended to cure defects. The issuance of process for witnesses, the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance. Every appearance, prior to judgment, not in compliance with this rule is a general appearance.

2. Any motion to challenge the jurisdiction provided for herein shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard. No determination of any issue of fact in connection with the objection to jurisdiction is a determination of the merits of the case or any aspect thereof.

3. The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony. The affidavits, if any, shall be served at least seven days before the hearing, shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify.

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Should it appear to the satisfaction of the court at any time that any of such affidavits are presented in violation of Rule 13, the court shall impose sanctions in accordance with that rule.

4. If the court sustains the objection to jurisdiction, an appropriate order shall be entered. If the objection to jurisdiction is overruled, the objecting party may thereafter appear generally for any purpose. Any such special appearance or such general appearance shall not be deemed a waiver of the objection to jurisdiction when the objecting party or subject matter is not amenable to process issued by the courts of this State.

**Credits**
April 12, 1962, eff. Sept. 1, 1962. Amended by orders of July 22, 1975, eff. Jan. 1, 1976; June 15, 1983, eff. Sept. 1, 1983; April 24, 1990, eff. Sept. 1, 1990.

Section 1 to Section 3, Rule 41 appear in this volume.

Vernon's Ann. Texas Rules Civ. Proc., Rule 120a, TX R RCP Rule 120a
Current with amendments received through February 1, 2025. Some rules may be more current, see credits for details.

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Coale on behalf of David Coale
Bar No. 787255
dcoale@lynnllp.com
Envelope ID: 99475363
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellants Opening Brief
Status as of 4/9/2025 3:33 PM CST

Associated Case Party: Blackstone Holdings III LP, et al.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David S.Coale | | dcoale@lynnllp.com | 4/9/2025 3:27:57 PM | SENT |
| Christopher JSchwegmann | | cschwegmann@lynnllp.com | 4/9/2025 3:27:57 PM | SENT |
| Christopher W.Patton | | cpatton@lynnllp.com | 4/9/2025 3:27:57 PM | SENT |
| Scott Smoot | | ssmoot@lynnllp.com | 4/9/2025 3:27:57 PM | SENT |
| Yaman Desai | | ydesai@lynnllp.com | 4/9/2025 3:27:57 PM | SENT |
| Gina Flores | | gflores@lynnllp.com | 4/9/2025 3:27:57 PM | SENT |
| Kyle A.Gardner | | kgardner@lynnllp.com | 4/9/2025 3:27:57 PM | SENT |
| Julie Archuleta | | jarchuleta@lynnllp.com | 4/9/2025 3:27:57 PM | SENT |
| Kerri Jones | | kjones@lynnllp.com | 4/9/2025 3:27:57 PM | SENT |
| Jessica Cox | | jcox@lynnllp.com | 4/9/2025 3:27:57 PM | SENT |

Associated Case Party: Primexx Energy Opportunity Fund, LP., et al.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephen Shackelford | | SShackelford@susmangodfrey.com | 4/9/2025 3:27:57 PM | SENT |
| Sarah Hannigan | | sHannigan@susmangodfrey.com | 4/9/2025 3:27:57 PM | SENT |
| Lindsey Eccles | | leccles@susmangodfrey.com | 4/9/2025 3:27:57 PM | SENT |
| Jeremy Fielding | | jeremy.fielding@kirkland.com | 4/9/2025 3:27:57 PM | SENT |
| Zack Ewing | | zack.ewing@kirkland.com | 4/9/2025 3:27:57 PM | SENT |
| Roger Cowie | | roger.cowie@troutman.com | 4/9/2025 3:27:57 PM | SENT |
| Taylor Levesque | | Taylor.Levesque@troutman.com | 4/9/2025 3:27:57 PM | SENT |
| Laura Brigham | | laura.brigham@kirkland.com | 4/9/2025 3:27:57 PM | SENT |